## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RUBIK'S BRAND, LTD.,

      PLAINTIFF,

V.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE A,

      DEFENDANTS.

CASE NO.: 1:20-CV-05338

JUDGE JOHN J. THARP, JR.

MAGISTRATE JUDGE JEFFREY I. CUMMINGS

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

Pursuant to this Court's Order [51], Plaintiff, Rubik's Cube Ltd., ("Rubik's" or "Plaintiff"), by and through their attorneys, hereby submits the following response in opposition to Defendant Yoyoly's Motion to Dismiss the Complaint (the "Motion"). [49].

## <u>INTRODUCTION AND BACKGROUND</u>

Plaintiff filed this action on September 10, 2020 against operators of foreign-based Internet stores to combat trademark and copyright infringement and counterfeiting. [1]. Among the named Defendants is the operator of the Amazon Internet store named Yoyoly ("Defendant") and identified as the Seller Alias listed on line 468 of Schedule A. Defendant transacts business in this judicial district by selling, offering for sale, and/or advertising products using counterfeit versions of Rubik's federally registered Rubik's Trademarks and Rubik's Copyrights[1] (collectively, the "Infringing Rubik's Products") to Illinois residents through its fully interactive, commercial Internet store Yoyoly ("Defendant Internet Store"). On September 21, 2020, this Court granted Rubik's *Ex Parte* Motion for Entry of a Temporary Restraining Order (the "TRO") [17], which was subsequently converted into a Preliminary Injunction on October 29, 2020. [31]. The Court also granted Plaintiff's Motion for

---

[1] "Rubik's Trademarks" and "Rubik's Copyrights" are defined in paragraph 2 of the Amended Complaint [6]

Electronic Service of Process under Fed. R. Civ. P. 4(f)(3) ("Rule 4(f)(3)"). [17] at ¶ 10-11. Specifically, the Court ordered Plaintiff to serve Defendants by electronically publishing a link to the Amended Complaint and other relevant documents on a website and by sending an e-mail to the e-mail address provided for Defendants that includes a link to said website. [32].

Pursuant to this Court's Order, Plaintiff served the TRO on Amazon to obtain the e-mail addresses provided and used by Defendants to register their Amazon accounts (the "Service E- mail Addresses"). See Declaration of Alison K. Carter ("Carter Declaration") at ¶ 4. Plaintiff served Defendants at the Service E-mail Addresses on October 30, 2020 [32]; Carter Declaration at ¶ 5. By Defendant's own admission, Defendant also received notice of this case from Amazon. [50]; Carter Declaration at ¶ 6.

Defendant filed the Motion arguing improper service of process and lack of personal jurisdiction. [50]. However, Defendant did not submit any evidence or declaration substantiating the claims asserted within, nor was any case law distinguished to the contrary of the law supporting Plaintiff's assertions. Additionally, Defendant does not dispute that the Court authorized electronic service, or that it received the Amended Complaint, Summons, TRO, and Preliminary Injunction by e-mail in accordance with the TRO. Accordingly, and for the reasons stated herein, Defendant's Motion should be denied.

## ARGUMENT

### I. DEFENDANT WAS PROPERLY SERVED ELECTRONICALLY UNDER FED. R. CIV. P. 4(F)(3) PURSUANT TO THIS COURT'S ORDER.

Defendant was properly served pursuant to Fed. R. Civ. P. 4(f)(3) and this Court's Order [17] on October 30, 2020; see also Carter Declaration at ¶ 5. Notably, the Defendant does not dispute that he received the Amended Complaint, Summons, TRO, and Preliminary Injunction, by e-mail; rather he admits that "plaintiff served legal documents on the defendant by e-mail." Thus, service was proper pursuant to the TRO Order [17].

Defendant does not address this Court's Order[2] [17] or the authority cited in Plaintiff's Memorandum in Support of its Motion for Electronic Service of Process Pursuant to Fed. R. Civ. P. 4(f)(3) [13]. Rather, Defendant argues, without providing any legal authority, that the exclusive method for service of a China-based individual or entity is under the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"). [50] at pp. 1-2. This would require that the Chinese Central Authority serve documents on the physical address of Defendant, a process that takes 1-2 years.[3] Neither Fed. R. Civ. P. 4 nor any other rule requires that a party first attempt service through the Hague Convention and it is not reasonable for Plaintiff to wait months or years for its trademark and copyright infringement claims to be addressed. Finally, service via email and electronic publication is not prohibited by international agreement (or Chinese law) and comports with constitutional notions of due process. See Declaration of Ann Marie Sullivan ("Sullivan Declaration") at ¶ 8.

## A. Legal authority regarding service of process.

Rule 4(f) of the Federal Rules of Civil Procedure ("Rule 4") governs international service of process on foreign individuals. Service under Fed. R. Civ. P. 4(f)(3) "must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text." *FTC v. Repair All PC, LLC*, 2017 U.S. Dist. LEXIS 83173, at *8 (N.D. Ohio May 31, 2017). Rule 4(f)(3) empowers the Court with flexibility and discretion to fit the manner of service utilized to the facts and

---

[2] Defendant's Motion amounts to an improper attempt to seek reconsideration of this Court's Order [17]. Defendant's Motion does not address the circumstances under which reconsideration is appropriate, namely "the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Defendant cannot sidestep the reconsideration process, which is "to be granted only in such extraordinary circumstances … Indeed, the court's orders are not mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *United States Securities and Exch. Comm'n v. National Presto Indus., Inc.*, 2004 WL 1093390, at *2 (N.D. Ill. Apr. 28, 2004). As such, Defendant's motion under Rule 12(b)(4)-(5) does not comport with the Federal Rules of Civil Procedure.

[3] The standard turnaround time for service in accordance with the Hague Convention in China is now between 1 and 2 years. *See Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (noting that the plaintiff had submitted materials to Chinese Central Authority eight months prior, "however, plaintiff has no indication on when service might be effectuated").

circumstances of the particular case. *Id.*

Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3), and the Hague Convention does not displace Rule 4(f)(3). *See Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018) (defendant's argument "misses the mark because service was not effected pursuant to the Hague Convention, and that agreement does not displace Rule 4(f)(3)."); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-1015 (9th Cir. 2002). Additionally, Rule 4(f)(3) "is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means." *Id.* at 1015. As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014.

Since "[the Supreme Court] has not provided clear guidance as to how the requirements of the Hague Convention interact with a court's authority to order alternative service under Rule 4(f)(3)," many courts "have reasoned that alternative service may be ordered pursuant to Rule 4(f)(3) as long as the alternative method of service is not expressly prohibited by the Convention or objected to by the receiving state." *Richmond Techs., Inc. v. Aumtech Bus. Solutions, 2011 U.S. Dist. LEXIS 71269,* at *40 (N.D. Cal. July 1, 2011). Numerous Courts have authorized alternative service pursuant to Fed. R. Civ. P. 4(f)(3) even when the defendant resides in a country that is a signatory to the Hague Convention, including for China-based defendants. See *Id.* at *40-41; see also *MCM Holding AG, et al. v. Dequn Zhao, et al*., No. 18-cv-1677 (N.D. Ill. Aug. 14, 2018) (authorizing email service on China-based defendant pursuant to Fed. R. Civ. P. 4(f)(3)).

Moreover, the Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Rio Props., Inc.*, 284 F.3d at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the

Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.* Courts across the United States, including in this District, have held that service of process by e-mail and electronic publication on China-based defendants pursuant to Rule 4(f)(3) is appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; *Sulzer Mixpac AG*, 312 F.R.D. at 331-32 (S.D.N.Y. 2015).

### B. Service via Email and Electronic Publication is Not Prohibited by The Hague Convention, and China has Not Objected to Electronic Service of Process.

Courts have agreed that service by email is not prohibited by the Hague Convention, including for China-based defendants. *Maclean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, 2008 U.S. Dist. LEXIS 97241, at *5 (N.D. Ill. Dec. 1, 2008) ("[t]he Hague Convention does not prohibit service by e-mail or facsimile"); *Sulzer Mixpac AG v. Medenstar Indus. Co*., 312 F.R.D. at 331- 32 (granting motion to serve Chinese defendant by email); *Nanya Tech. Corp. v. Fujitsu, Ltd*., 2007 U.S. Dist. LEXIS 5754, at *7 (D. Guam Jan. 25, 2007). Further, limiting alternative service methods to only those explicitly authorized by China would necessarily render Fed. R. Civ. P. 4(f)(3) superfluous and redundant of Fed. R. Civ. P. 4(f)(1).

China has not objected to service by email and electronic publication. To the contrary, China explicitly authorizes service by email in certain situations and service by public announcement "if the whereabouts of a recipient of the service is unknown, or if a document cannot be served by the other methods reflected in the law." *See Chanel, Inc.*, 2010 U.S. Dist. LEXIS 50745, at *7. China also explicitly authorizes "[s]ervice by facsimile, e-mail and any other means through which the receipt of the document may be acknowledged" on defendants located outside of China. See Sullivan Declaration, Exhibit 4. Reciprocity dictates that if U.S. residents can be served via email by a Chinese court, the reverse is also true.

While China has objected to service by postal mail, courts have declined to extend countries' objections to specific forms of service permitted by Article 10 of the Hague Convention, such as postal

mail, to service by other alternative means, including email. *Sulzer Mixpac AG*, 312 F.R.D. at 331-32 (collecting cases holding that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10). "China's objection to service by postal mail does not cover service by email, and these forms of communications differ in relevant respects. Email communications may be more reliable than long-distance postal communications, and the arrival of an email at its destination address may be more readily tracked." *Id*. at 332. Further, while there may be strict and formal procedures for effectuating service in China, these are of little consequence to this Court's determination. *Nanya Tech. Corp*., 2007 U.S. Dist. LEXIS 5724, at *14 (the Court should not consider the receiving country's laws of service when evaluating whether service pursuant to Fed. R. Civ. P. 4(f)(3) was proper). Accordingly, service of process by electronic publication and email was appropriately ordered by this Court and effectuated under Fed. R. Civ. P. 4(f)(3) since it is not prohibited by the Hague Convention, and because China has not objected to service of process by electronic publication and email. Defendant has provided no authority to the contrary.

### C. E-mail Service Pursuant to Rule 4(f)(3) was Proper Even if Defendants' Physical Addresses Were Purportedly Available.

As established above, Rule 4(f)(3) simply states that service can be effectuated "by any means not prohibited by international agreement." Rule 4(f)(3) does not mention any requirement regarding attempts to identify, verify or serve a defendant at a purported physical address prior to requesting alternative service. See *Romag Fasteners, Inc.*, 140 S. Ct. at 1495 ("Nor does this Court usually read into statutes words that aren't there"). Rather, "Rule 4(f)(3) provides the Court with flexibility and discretion empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case." *Strabala*, 318 F.R.D. at 100.

Court-directed electronic service pursuant to Rule 4(f)(3) is particularly appropriate in this case where "there is a need for speed that cannot be met by following the Hague Convention methods…"

because of the injunctive relief sought by Plaintiff. *Strabala*, 318 F.R.D. at 114 citing 4B FED. PRAC. & PROC. CIV. § 1134 (4th ed.). Article 15 of the Hague Convention provides that alternate methods may be used if a Central Authority does not respond within six months. *Id.* at 100. Even if a purported address is real and Defendants are available for service at those addresses, it is nearly certain that the Chinese Central Authority will exceed six months in its attempt to effectuate service. For example, in *Luxottica Group S.p.A., et al. v. Xiong Hua Ping, et al*., No. 18-cv-02188, the plaintiffs' request for service was pending with the Chinese Central Authority for well over six months. See also *Victaulic Co. v. Allied Rubber & Gasket Co*., 2020 U.S. Dist. LEXIS 82150, at *3 (S.D. Cal. May 8, 2020) ("… the Ministry of Justice in China noted that service is 'time-consuming and not efficient' and confirmed that it often takes more than two years to complete. Moreover, the current global COVID-19 pandemic has likely complicated service efforts in China and will undoubtably result in additional service delays in the future"). As such, service by electronic means is proper, even if physical addresses for Defendants are purportedly available.

### D. The Hague Convention Does Not Apply Because Defendants' Addresses Were Unknown.

Article 1 of the Hague Convention states that "[t]his Convention shall not apply where the address of the person to be served with the document is not known." The Defendant does not dispute that service under the Hague is not required when a defendant's address is unknown pursuant to Article 1. In an attempt to avoid the implications of Article 1, Defendant alleges that "plaintiff can enter the defendant's store without any difficulty and find the seller's real identity information." [50] at p. 1. However, no physical address was provided on the infringing product listing and one was not able to be found by the Plaintiff. Carter Declaration at ¶ 3. Defendant also suggests "if a seller wants to operate a store in Amazon, he must register the real company or operator information..." [50] at p.1. However, Defendant is misinformed. Defendants must provide e-mail addresses and physical addresses to third-party online marketplace platforms such as Amazon when registering, but while e-mail addresses are

typically verified, no verification typically occurs for physical addresses. This allows counterfeiters to "go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network." Declaration of Paul Varley ("Varley Declaration") at ¶ 16. Since an ecommerce store operator can input any physical address, such addresses are usually false and/or are not where the e-commerce store operator is located. *Id.* The U.S. Department of Homeland Security's Office of Strategy, Policy & Plans found that "some marketplaces allow sellers to set up a seller account with little identifying information. U.S. Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods* (Jan. 24, 2020) https://www.dhs. gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf). Further, the U.S. House Committee on Energy and E-Commerce found that some marketplaces "allow sellers to set up a seller account…with fictitious information." U.S. House Committee on Energy and E-Commerce, *Hearing on "Buyer Beware: Fake and Unsafe Products on Online Marketplaces"* (Feb. 28, 2020) (https://energycommerce.house.gov/sites/democratsenergycommerce.house.gov/files/ documents/3.4.20%20CPC%20Hearing%20Memo%20-%20Online%20Counterfeits_0.pdf). As such, even if a physical address is available from a third-party online marketplace platform, it is not a reliable means for identifying and locating Defendants.

In light of the above, Plaintiff is not required to first attempt service to an address under the Hague Convention, if Plaintiff reasonably believed service at a particular address would be ineffective. *Advanced Access Content System Licensing Administrator, LLC v. Shen*, 2018 U.S. Dist. LEXIS 169603, at *11 (S.D.N.Y. Sep. 30, 2018).

### E.  Service via E-mail Comports with Constitutional Notions of Due Process.

This Court also correctly found that service via e-mail comports with constitutional notions of due process, because it was reasonably calculated, under all of the circumstances, to apprise Defendants of the pendency of this action and afford Defendants an opportunity to present objections. See *Maclean-Fogg*, 2008 U.S. Dist. LEXIS 97241, at *5. Courts have also held that communications

to e-mail addresses listed on a defendant's website comport with due process: "[w]hile email communications may also go astray or fail to come to the relevant individuals' attention, the Court finds that in this case, service to the email address listed on defendant's website is 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Sulzer Mixpac AG*, 312 F.R.D. at 332.

Defendant has actual notice of this Case already. Defendant's Motion does not explain why service by e-mail unfairly prejudices Defendant or violates due process. Defendant is already aware of the pending action but demands service pursuant to the Hague Convention. Defendant's objection to alternative service is nothing more than an attempt to create procedural hurdles to timely litigation rather than ensuring that Defendant receives notice of the pending suit. Defendant's Motion, if granted, will most definitely make this Case sit stagnant for months, if not years. In contrast, electronic publication and e-mail have proved to be reliable mechanisms for quickly providing notice to ecommerce store operators in similar cases. *See Maclean-Fogg Co.*, *Sulzer Mixpac AG*.

## II. PERSONAL JURISDICTION IS PROPER SINCE DEFENDANT TARGETED AND REACHED OUT TO DO BUSINESS WITH ILLINOIS AND UNITED STATES RESIDENTS.

### A. Legal Standard for Personal Jurisdiction

Plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of Plaintiff's well-pleaded facts should be accepted as true and any factual determinations should be resolved in its favor. See *Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). ("Jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits."). Here, evidence submitted by Plaintiff establishes, and Defendant does not deny, that Defendant operates the e-commerce, fully interactive Amazon store, "Yoyoly," which targets consumers in the United States and Illinois, by offering to sell Counterfeit Products using the Rubik's Trademarks into this Judicial District [See relevant excerpt from the Varley Declaration, submitted hereto as Exhibit A]. Specifically, Plaintiff offers screenshot evidence of the

Defendants' interactive Amazon webstore, offering the product at issue for sale to consumers in Illinois with an address or shipping to Oak Park, Illinois, within this Judicial District.

Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citing Fed. R. Civ. P. 4(k)(1)(A)). Specific personal jurisdiction is appropriate where: (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state; and (2) the alleged injury arises out of the defendant's forum-related activities. *Tamburo*, 601 F.3d at 702 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The exercise of specific personal jurisdiction must also comport with traditional notions of fair play and substantial justice. *Id.* (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). That a foreign corporation avails itself of "the benefits of an economic market in the forum State" is sufficient to establish personal jurisdiction "even if it has no physical presence in the State." *Quill Corp.*, 504 U.S. at 307; see also, *Heritage House Restaurants, Inc. v. Cont'l Funding Grp., Inc*., 906 F.2d 276, 281 (7th Cir. 1990) (stating that "[t]he physical presence of a defendant in Illinois during the transaction is not necessary to obtain jurisdiction under the long-arm statute" and that "[w]here a relationship is naturally based on telephone and mail contacts, these contacts can justify jurisdiction over a defendant").

Under the plain language of 15 U.S.C. § 1114 and 35 U.S.C. § 271, an offer to sell an infringing item, even without any other activity, establishes liability for trademark counterfeiting and infringement. *Levi Strauss v. Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997). See also *Monster Energy Company v. Chen Wensheng, et al.*, 136 F. Supp. 3d at 903 n.4 ("Infringement of trademark is a tort"). As long as one tortious act is committed in Illinois, the courts of the state, and thus this Court, may exercise personal jurisdiction over Defendant. *Monster Energy Company v. Chen Wensheng, et al*., 136 F. Supp. 3d at 904 (holding that "[d]isplaying photos of an item for sale and inviting potential purchasers to place an order and buy the product through an Internet store is an offer for sale"); *Dental*

*Arts Lab., Inc. v. Studio 360 the Dental Lab, LLC*, 2010 U.S. Dist. LEXIS 124029, at *7 (N.D. Ill. Nov. 23, 2010) ("As long as one tortious act is committed in Illinois, the courts of the state, and thus this Court, may exercise personal jurisdiction over Defendant."; *Store Décor Division of Jas International, Inc. v. Stylex Worldwide Industries, Ltd*., 767 F. Supp. 181, 184 n.3 (N.D. Ill. 1991) ("the commission of a single tortious act in Illinois brings a defendant within the scope of § 2-209(a)(2) even if the defendant has no other contact with Illinois and has never been to Illinois."). As established above, Defendant's offer for sale to Illinois residents without more is a tortious act committed in Illinois.

### B. Defendant Need Not Make An Actual Sale To Establish Personal Jurisdiction

In relation to the above, Defendant's only argument is to allege that they have made no actual sales into Illinois. However, actual sales are not required to establish jurisdiction. This Court has found personal jurisdiction proper in cases similar to the present one, where a single offer to sell an infringing product into this Judicial District was found to be sufficient to confer personal jurisdiction. *See CamelBak Products, LLC v. The Partnerships et al.,* 20-cv-1544 [75] (Defendants' motion to dismiss and to withdraw the case are denied for the reason stated in open court.), *See also, Mori Lee v. Gouwucraze, et al.* 19-cv-7555[60] (N.D. Ill, May 14, 2020) (Kennelly, J) ("[Plaintiff] has offered evidence tending to show that [Defendant] though not physically located in Illinois or even in the United States, operated an interactive website through which it offered products for sale to consumers located in Illinois, who would then select an address where the products should be shipped, including Illinois as one of the options. This is enough to amount to [Defendant] having purposefully availed itself of doing business in Illinois."); *Monster Energy Company v. Chen Wensheng, et al.*, 136 F. Supp. 3d 897, 909 (N.D. Ill. 2015) ("defendants' offers to sell counterfeit Monster Energy Products on their Internet stores constitute tortious activity committed in Illinois sufficient to establish personal jurisdiction"). The Seventh Circuit found jurisdiction proper where a company "h[olds] itself out as open to do business with every state" and is "ready and willing to do business with [that state's]

residents." *Mori Lee v. Gouwucraze, et al.* 19-cv-7555[60] (N.D. Ill, May 14, 2020) (quoting *Illinois v. Hemi Grp. LLC,* 622 F.3d 754). Like the Defendants in *Mori Lee, Camelbak, Monster Energy,* and *Hemi,* the Defendants in this case purposely availed themselves of the privilege of doing business in Illinois, stood ready and willing to do business with Illinois residents through their fully interactive commercial Internet stores therefore personal jurisdiction is proper in this Court.

In *Hemi Group*, the Seventh Circuit found that it had personal jurisdiction over defendants because they operated a nationwide business model where they intentionally created and operated several commercial, interactive websites to offer products for sale and allow online orders from Illinois residents. *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757-58 (7th Cir. 2009). As such, specific jurisdiction is proper where a company "h[olds] itself out as open to do business with every state" and is "ready and willing to do business with [that state's] residents." *Id*. at 758. Following the Seventh Circuit's decision in *Hemi Group*, courts in this district have regularly exercised personal jurisdiction over offshore Internet stores offering shipping to the United States, including Illinois. S*ee, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell infringing product to United States residents, including Illinois; no actual sale required); *Burberry Limited, et al. v. Weng Junpeng, et al.*, No. 15-cv-7994 (N.D. Ill. Oct. 2, 2015) (unpublished) ("[a] single tortious act committed in Illinois, no matter how minimal, brings the alleged tortfeasors within the scope of the long arm statute and thus demonstrates that personal jurisdiction is proper in Illinois"); *Monster Energy Company v. Chen Wensheng, et al.*, 136 F. Supp. 3d 897, 906 (N.D. Ill. Sept. 29, 2015) (personal jurisdiction properly asserted over defendants who offered to sell counterfeit products to all fifty states, including Illinois, through an Internet store; no sale required).

As was the case in *Hemi Group*, Defendant "stood ready and willing to do business with Illinois residents" by creating and operating a commercial, fully interactive Internet store through which unauthorized Rubik's products could be purchased. *Hemi Grp.*, 622 F.3d at 758; *Monster Energy Co*.,

136 F. Supp. at 904. Specifically, Defendant operates an Internet store on Amazon, where it offered Counterfeit Products for sale to Illinois residents.

Defendant does not mention or attempt to distinguish the Seventh Circuit's decision in *Hemi Group*, even though it is controlling law and despite its factual similarities to this case. Likewise, Courts have expressly rejected Defendant's argument that "no products were sold to Illinois." Defendant "aimed [its] alleged tortious products to residents in all fifty states and 'made [its] services available to anyone by way of [its] website[s],'" and "[c]haracterizing the sales as unilateral is misleading . . . because it ignores several of [Defendant's] own actions that led up to and followed the sales." *Valtech, LLC v. 18th Ave. Toys Ltd.*, No. 14 C 134, 2015 U.S. Dist. LEXIS 17138, at *12 (N.D. Ill. Feb. 12, 2015).

For the same reasons, Defendant is also subject to jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) provides for personal jurisdiction through nationwide service of process over any defendant provided that: (1) the plaintiff's claims are based on federal law; (2) no state court could exercise jurisdiction over the defendants; (3) the exercise of jurisdiction is consistent with the laws of the United States; and (4) the exercise of jurisdiction is consistent with the Constitution. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000). Since Defendant intentionally and knowingly offered for sale products to United States residents, personal jurisdiction is also proper under Rule 4(k)(2).

Finally, fair play means that off-shore Internet Stores that decide to offer for sale and sell products to consumers in the United States, including Illinois, must come to the United States and stand accountable for conduct relating to such sales. *Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *13 (N.D. Ill. Nov. 17, 2015). Defendant "certainly should not be surprised by the jurisdictional consequences of [its] actions" given that it had sufficient resources to purposefully avail itself of the Illinois market. *Id.* at *14 (quoting *Hemi Grp., LLC*, 622 F.3d at 758). As such, Defendant should have reasonably foreseen being subjected to jurisdiction in Illinois.

### III.   THE ASSET RESTRAINT IS PROPER

The asset restraint remains proper because Defendant is likely to dissipate any assets in the United States and the balance of harms continues to favor Plaintiff. Plaintiff has not waived its claim for an accounting of profits by asking for statutory damages. Moreover, Defendant has not met its burden to present documentary proof that the assets in Defendant's Amazon Account are not the proceeds of counterfeiting activities. *N. Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist. LEXIS 14226, at *11 (N.D. Ill. Mar. 30, 2006).

**A.  This Court Previously Deemed the Asset Restraint to be Proper.**

As this Court correctly found in entering the TRO [17] and Preliminary Injunction [31], the balance of harms has not changed and continues to favor Plaintiff. Defendant has failed to identify any U.S. based assets and is likely to swiftly move its assets outside of the United States if the asset restraint is lifted. Without the asset restraint, Plaintiff would be prevented from realizing its right to an equitable accounting of Defendant's profits and would be irreparably harmed. In contrast, the potential harm to Defendant is purely monetary, and only for a finite period of time. Defendant does not have a legitimate interest in profits from the sale of Counterfeit Rubik's Products. Likewise, as a willful counterfeiter, Defendant should be given little equitable consideration. In assessing the risk of irreparable harm to Defendant, the Court should "exclude[] any burden it voluntarily assumed by proceeding in the face of a known risk." *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, 2016 U.S. Dist. LEXIS 144660, at *28.

**B.  Defendant Has Not Met Its Burden To Show The Restraint Is Improper.**

Defendant has not met its burden to present documentary proof that the assets in Defendant's Amazon Account are not the proceeds of counterfeiting activities. *See N. Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist. LEXIS 14226, at *11 (N.D. Ill. Mar. 30, 2006). Defendant states without documentary support that "the defendant searched the sales records of related products, and found no products were sold to Illinois, and the defendant's sales of related products were zero." [50]

at ¶ 4. However, as detailed above and in Plaintiff's Motion for Preliminary Injunction [29], Defendant has failed to produce sufficient documentation relating to each transaction constituting the funds currently frozen in Defendant's Amazon Account. For the reasons stated, the asset restraint is proper.

## IV. THERE IS NO DAMAGE TO PUBLIC INTEREST.

Lastly, Defendant argues that Plaintiff's conduct is damaging the interests of "most legitimate sellers" in China. [50] at ¶ 5. Plaintiff does not bring this action against any legitimate sellers of the Rubik's Products. In fact, Plaintiff's counsel works to ensure that the Rubik's Brand is protected by going after Counterfeit Goods. This preserves the trust between the public and the Rubik's Products.

Defendant also argues that "Chinese sellers are considering abandoning the Illinois market because they fear that their inadvertent business behavior will lead to lawsuits," and, "as a result, many local residents will not be able to enjoy the benefits of the competition between a variety of commodities." [50] at ¶ 5. Defendant is right in the fact that those who sell Counterfeit Products, like Defendant himself, may find themselves involved in litigation. On the contrary, Chinese sellers of legitimate Rubik's Brand products, if any, are able to conduct business in Illinois if they choose to do so, without risk of litigation. Illinois consumers are in fact not conferring a benefit by purchasing counterfeit Rubik's products, because the quality and safety of such products cannot be determined.

For the above reasons, Defendant's argument that Plaintiff's action against him damages the Illinois public's interest in e-commerce with China should be denied.

## V. DEFENDANT'S UNSUPPORTED ASSERTIONS ARE INSUFFICIENT TO REBUT THIS COURT'S PREVIOUS FINDING THAT PERSONAL JURISDICTION AND ELECTRONIC SERVICE OF PROCESS ARE PROPER.

Since this Court has already found that personal jurisdiction exists over Defendant, and that Service of Process via electronic means is proper, Defendant bears the burden of establishing that the Court lacked jurisdiction in the first instance and must present facts that rebut Plaintiffs' *prima facie* case with affidavits or exhibits in opposition to the exercise of jurisdiction. *Purdue Research Found.*, 338 F.3d at 782. Defendant's Motion [49] is not supported by any documentary evidence. Arguments

in a memorandum, unsupported by documentary evidence, are not evidence. *Medallion Prods. v. McAlister*, 2008 U.S. Dist. LEXIS 80550, at *8 (N.D. Ill. Oct. 9, 2008) ("As it must, the court has disregarded any unsupported factual statements") (citing *United States v. Stevens*, 500 F.3d 625, 628-29 (7th Cir. 2007)). Accordingly, Defendant's memorandum is insufficient to rebut Plaintiffs' *prima facie* case of personal jurisdiction and service of process via electronic means.

## **<u>CONCLUSION</u>**

Accordingly, for the reasons stated herein, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss the Complaint [49].

Dated: January 18, 2021                      Respectfully submitted,

*/s/ Ann Marie Sullivan*
Ann Marie Sullivan
Alison K. Carter
AM Sullivan Law, LLC
1440 W. Taylor St., Suite 515
Chicago, Illinois 60607
Telephone: 224-258-9378
E-mail:  ams@amsullivanlaw.com
***ATTORNEYS FOR PLAINTIFF***