**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RUBIK'S BRAND, LTD.,<br><br>     Plaintiff,<br><br> v.<br><br>THE PARTNERSHIPS AND<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE A,<br><br>     Defendants. | Case No. 20-cv-05338<br><br>**Judge John J. Tharp, Jr.**<br><br>**Magistrate Judge Jeffrey I. Cummings** |

**MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE,
<u>CLARIFICATION OF THIS COURT'S OPINION AND ORDER</u>**

Pursuant to Fed. R. Civ. P. 59, Levi Strauss & Co., H-D U.S.A., LLC, Entertainment One UK Ltd., Chrome Hearts LLC, and Deckers Outdoor Corporation ("Amici") respectfully submit this motion for reconsideration or, in the alternative, clarification of this Court's Opinion and Order ("Order") entered on March 4, 2021. [73]. Reconsideration or clarification of this Court's Order is appropriate for at least the following reasons.

1.  The legal record provided by Plaintiff Rubik's Cube Ltd. ("Plaintiff") and Defendant Yoyoly ("Defendant") was materially deficient because it failed to address multiple relevant Seventh Circuit cases regarding personal jurisdiction over "interactive website" operators. In this case, a specific jurisdiction analysis under Seventh Circuit jurisprudence requires the court to evaluate: (1) defendant's actions targeting the jurisdiction leading up to any offer for sale (*i.e.* "defendant reaching out"); and (2) whether the product offered for sale is related to the litigation. In *Hemi Group* and *Curry*, the Seventh Circuit found specific jurisdiction proper where the defendant operated an e-commerce store that offered for sale a product into the district and the

1

product related to the litigation.[1]  Conversely, the Seventh Circuit found specific jurisdiction lacking in *be2* and *Mobile Anesthesiologists* where neither defendant offered for sale any product into the district[2] and in *Advanced Tactical* and *Matlin* where the product offered for sale was unrelated to the litigation.[3]  In this case, the only purpose for Defendant's e-commerce store on the U.S. facing Amazon.com portal was to sell products to United States consumers, including an allegedly infringing product that is the basis for the lawsuit.  An Amazon.com e-commerce store is not merely an "interactive website" like a dating portal (*be2*) or informational website (*Mobile Anesthesiologists*) (see Point 2 below).  Moreover, the sales (or lack thereof) that follow from a defendant setting up an e-commerce store offering for sale a product into the jurisdiction (*i.e.* "Illinois residents reaching back") are not dispositive or even material to the analysis under Seventh Circuit law.  The sales to Illinois residents in *Curry* and *Hemi* merely provided further confirmation regarding the defendants' already established intention to conduct business in the district.

2.      The factual record provided by the parties was materially deficient, thus preventing this Court from analyzing personal jurisdiction over an Amazon.com e-commerce store under Seventh Circuit jurisprudence.  Specifically, the record is missing facts regarding several of the Defendant's own actions inherent with opening an Amazon.com e-commerce store.  These actions establish Defendant's purposeful targeting of the United States, including Illinois, and go well

---

[1] *Illinois v. Hemi Grp. LLC*, 622 F.3d 754 (7th Cir. 2009); *Curry v. Revolution Labs., LLC,* 949 F.3d 385 (7th Cir. 2020)

[2] *be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011); *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440 (7th Cir. 2010).

[3] *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014); *Matlin v. Spin Master Corp.*, 921 F.3d 701 (7th Cir. 2019),

beyond "maintaining a website." Such facts would show that Defendant was required to select the United States, including Illinois, from a list of regions in which the Amazon.com e-commerce store is electing to do business. Defendant also set up a storefront through which U.S. customers, including Illinois customers, could purchase allegedly infringing products in U.S. dollars and maintained logistics for shipping those products to Illinois. Additionally, Defendant was required to review and agree to the Amazon Services Business Solutions Agreement that included agreeing that they will ensure "your offer and subsequent sale of [Your Products] on any Amazon site comply with all applicable Laws." Finally, by offering a product for sale on Amazon.com to Illinois, the e-commerce store operator contractually agreed to accept orders from Illinois residents and fulfill orders as soon as the "place your order" button was clicked since money is instantly exchanged. Any suggestion that Defendant could affirmatively set up an Amazon.com e-commerce store targeting the United States and Illinois, offer for sale an allegedly infringing product on that store, accept money and then unilaterally decide whether to accept and fulfill an order based on the buyer is both factually inaccurate and in violation of basic contract law and Defendant's agreement with Amazon.

3. The only function of an Amazon.com[4] e-commerce store is to sell products to consumers in the United States, including Illinois. If it was determined that personal jurisdiction did not exist in Illinois, then there must be personal jurisdiction over the Amazon.com e-commerce store under Fed. R. Civ. P. 4(k)(2) since the store targeted the United States. The Order does not address personal jurisdiction under Fed. R. Civ. P. 4(k)(2) even though it was argued in the Motion. Owners of United States trademarks must have access to federal courts in the United States to enforce their United States trademark rights and protect consumers in the United States.

---

[4] For example, an Amazon store targeting Canada would use Amazon.ca and choose to not offer shipping to the United States. Gaudio Declaration at ¶ 3.

Defendants cannot insulate themselves from harm that they cause in the United States, including Illinois, by simply locating themselves within the borders of China or any other country and explicitly offering to sell and ship products to the United States, including Illinois.

As further explained below, Amici respectfully request that this Court reconsider or, alternatively, clarify its Order. It is clear that the factual and legal record provided by the parties was deficient and did not provide the Court with what was needed for the Court to conduct a meaningful review of whether personal jurisdiction was proper. Reconsideration of the Order in light of the additional evidence that was not made part of the record by the parties is proper. Alternatively, Amici request that the Court clarify that its Order was based on the specific factual record provided by the parties in this case.

## **MEMORANDUM**

## I.   **BACKGROUND ON AMAZON.COM E-COMMERCE STORE OPERATORS**

Defendant is an e-commerce store on Amazon.com ("Amazon"). Amazon has aggressively recruited Chinese manufacturers and merchants to sell to consumers outside the country. Jon Emont, *Amazon's Heavy Recruitment of Chinese Sellers Puts Consumers at Risk*, Wall St. J. 1-2 (Nov. 11, 2019). Gaudio Declaration at ¶ 2. According to a 2019 investigation by the Wall Street Journal, "[o]f 1,934 sellers whose addresses could be determined, 50% were based in China." *Id*. "Amazon has made its site more accessible to Chinese speakers, created special programs that address Chinese sellers' logistical needs and sent a stream of employees to recruit suppliers." *Id*. As a result of Amazon's recruitment effort of Chinese sellers, Amazon sellers have said that Amazon "is the most cost-effective way to sell into the United States." *Id*.

When setting up a storefront on the U.S. facing Amazon.com, a Chinese seller clicks on the option "I want to open overseas online store" and it is able to choose between registering in

various regions, including North America. Declaration of Lijia Chen ("Chen Declaration") at ¶ 4. If a seller uses the selling services offered in Amazon's United States store, the seller agrees to the Amazon Services Business Solutions Agreement. *Id.* at ¶ 5. Article S-2.1 of the Amazon Services Business Solutions Agreement provides that the seller will:

> [S]ource, offer, sell and fulfill Your Seller-Fulfilled Products, and source and, offer and sell your Amazon-Fulfilled Products, in each in accordance with the terms of the applicable Order Information, this Agreement, and all terms provided by you or us and displayed on the applicable Amazon Site at the time of the order and be solely responsible for and bear all risk for those activities.

*Id.* at ¶¶ 5-6. The seller also agrees to "fulfill Your Products throughout the Elected Country." *Id.* Sellers create shipping settings, where the seller must affirmatively select the regions to which they will ship products and exclude the regions to which they will not ship. *Id.* at ¶¶ 7-12. Sellers can only cancel transactions "as permitted pursuant to your terms and conditions appearing on the applicable Amazon Site at the time of the applicable order or as may be required under this Agreement." *Id.* at ¶¶ 5-6. Finally, sellers on Amazon agree that they will ensure "your offer and subsequent sale of [Your Products] on any Amazon site comply with all applicable Laws." *Id.* at ¶ 5. In contrast, for example, an Amazon store targeting Canada would choose Amazon.ca and can choose to not offer shipping to the United States. Gaudio Declaration at ¶ 3.

## II.     ARGUMENT

### 1. Personal Jurisdiction Is Proper Over Defendant Because It Directed Its Activities to the Illinois Market and the Cause of Action Relates to Those Activities.

Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a *prima facie* case[5] for personal jurisdiction; all of Plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See Curry v. Revolution Labs.,*

---

[5] If necessary, Plaintiff is entitled to discovery. *See Black & Decker, Inc. v. Shanghai Xing Te Hao Indus. Co.*, 2003 LEXIS 10127, at *12 (N.D. Ill. June 13, 2003) ("[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous.").

*LLC,* 949 F.3d 385, 392-93 (7th Cir. 2020). "The question is whether the Court may exercise specific personal jurisdiction, which applies when a defendant has directed its activities at the forum state, and when the cause of action relates to those activities." *See Volkswagen AG v. iman365-usa*, No. 18-cv-06611, 2020 U.S. Dist. LEXIS 34218, at \*7-8 (N.D. Ill. Feb. 28, 2020) *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). The defendant's conduct must be purposefully directed at the forum state, such that the defendant would anticipate being haled into court here. *Id.* (*citing Walden v. Fiore*, 571 U.S. 277, 284-85, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)).

In *Illinois v. Hemi Grp. LLC*, the Seventh Circuit explained that, "Hemi stood ready and willing to do business with Illinois residents." 622 F.3d 754, 757-58 (7th Cir. 2009). "It is Hemi reaching out to residents of Illinois, and not the residents reaching back, that creates the sufficient minimum contacts with Illinois that justify exercising personal jurisdiction over Hemi in Illinois." *Id.* at 758. As such, specific jurisdiction is proper where a company "h[olds] itself out as open to do business with every state" and is "ready and willing to do business with [that state's] residents." *Id.* Following *Hemi*, the Seventh Circuit in *Curry v. Revolution Labs., LLC* determined that personal jurisdiction was proper over non-resident e-commerce store operators, including Amazon stores:

> We are satisfied that Revolution has formed sufficient minimum contacts with Illinois. Like Hemi, Revolution sells its products only online through its website and third-party websites. Revolution's interactive website for the sale of its products requires the customer to select a shipping address. Illinois is among the "ship-to" options from which the customer must choose. Illinois residents purchasing Revolution's products also receive an email from Revolution thanking them for their business, confirming their order, and listing the Illinois shipping address.
>
> Revolution's own actions in establishing these commercial contacts with Illinois fairly can be described as purposeful. Preparing to engage in commercial activity, Revolution created an interactive website and explicitly provided that Illinois residents could purchase its products through that website. It further arranged for the sale of its products through third-party websites. After the sales, Revolution

6

sent written confirmation to the Illinois customers acknowledging their sale and including their Illinois shipping address, and, finally, Revolution shipped Diesel Test to its customers who were in Illinois.

949 F.3d at 399. Under this precedent, Illinois courts have consistently exercised personal jurisdiction over non-resident e-commerce store operators. *See, e.g., Tommy Hilfiger Licensing LLC et. al. v. The P'ships, et al.*, No. 20-cv-7477 (N.D. Ill March 24, 2021) (Dkt. No. 46) (unpublished) ("Hilfiger has offered evidence tending to show that [defendant], though not physically located in Illinois or even in the United States, operated an interactive website through which it purposefully offered products for sale to consumers, including consumers located in Illinois, who would then select an address where the products should be shipped, including Illinois as one of the options. This is enough to amount to [defendant] having purposefully availed itself of doing business in Illinois."); *Mori Lee v. Partnerships*, No. 19-cv-7555 (N.D. Ill. May 14, 2020) (Dkt. No. 60) (unpublished);[6] *Volkswagen AG v. iman365-usa,* No. 18-cv-06611, 2020 U.S. Dist. LEXIS 34218, at *11 (N.D. Ill. Feb. 28, 2020); *Conair Corp., et al. v. Chen Xin, et al.*, No. 16-cv-09693 (N.D. Ill. Mar. 22, 2017); *Monster Energy Company v. Chen Wensheng, et al.*, 136 F. Supp. 3d 897, 909 (N.D. Ill. 2015); *Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015). The Order notes that "[i]t is true that other district courts have come out differently on this question…" [73] at p. 8. However, the Order does not acknowledge that many Courts in this District have found jurisdiction to be proper over e-commerce stores offering to sell infringing products to the United States, including Illinois. In fact, Amici are not aware of any contrary decisions in this District.

---

[6] The Court in *Mercis B.V. v. The Partnerships, et al.*, No. 20-cv-06422 (N.D. Ill. Mar. 1, 2021) (Feinerman, J.) found that there was personal jurisdiction following the rationale of *Mori Lee* and denied a motion to dismiss.

### a. Defendant Directed Its Activities to the Illinois Market.

      i. *Defendant's Creation and Maintenance of an E-Commerce Store Through Which Customers Could Purchase Infringing Products Is Sufficient to Support Personal Jurisdiction.*

Here, Defendant "stood ready and willing to do business with Illinois residents" by creating and operating its interactive e-commerce store through which the allegedly infringing products could be purchased. *Hemi Grp*, 622 F.3d at 758; *Curry,* 949 F.3d at 399. Defendant chose to operate a store on Amazon.com, as opposed to platforms targeting other countries such as Amazon.de, Amazon.ca or Amazon.co.uk. For example, if Defendant wanted to target Canada, and not the United States, they would use Amazon.ca and not offer shipping to the United States. Gaudio Declaration at ¶ 3. Defendant affirmatively selected the United States from a list of regions to do business with, stood ready to accept payment from Illinois residents, and offered to ship counterfeit products to Illinois. *Hemi Grp*, 622 F.3d at 758; *Curry*, 949 F.3d at 399. By offering a product for sale on Amazon.com to Illinois, Defendant contractually agreed to accept orders from Illinois residents and fulfill orders as soon as the "place your order" button was clicked since money is instantly exchanged. Chen Declaration at ¶¶ 5-6. Once an Amazon.com customer clicks "place your order," the customer pays money for the product and receives a confirmation email with their shipping address. Therefore, Defendant's reaching out and expressly electing to do business with the residents of all fifty states, including Illinois, the sixth most populous state, establishes personal jurisdiction. *Hemi Grp*, 622 F.3d at 758; *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 428 (7th Cir. 2010); *see also, Monster Energy Co.*, 136 F. Supp. 3d at 909 ("defendants' offers to sell counterfeit Monster Energy Products on their Internet stores constitute tortious activity committed in Illinois sufficient to establish personal jurisdiction"); *Christian Dior Couture, S.A.*, 2015 U.S. Dist. LEXIS 158225 at *6 (same).

ii.  *Defendant Did Not Meet Its Burden to Contest Plaintiff's Prima Facie Case
of Personal Jurisdiction*.

Defendant's Motion [49] was not supported by any evidence and the supporting
Memorandum [50] did not contain any case law.[7]  *United States v. Berkowitz*, 927 F.2d 1376, 1384
(7th Cir. 1991) ("perfunctory and undeveloped arguments, and arguments that are unsupported by
pertinent authority, are waived").  Without corroboration, Defendant stated that it "searched the
sales records of related products, and found no products were sold to Illinois, and the defendant's
sales of related products were zero."  [50] at p. 3.  Plaintiff submitted a declaration [55] in support
of personal jurisdiction showing that Plaintiff made a virtual test purchase, but Defendant did not
submit a declaration to support any of its statements.  *Medallion Prods. v. McAlister*, No. 06-cv-
2597, 2008 U.S. Dist. LEXIS 80550, at *8 (N.D. Ill. Oct. 9, 2008) ("As it must, the court has
disregarded any unsupported factual statements").  Even though Defendant did not submit an
affidavit, at best, there is a factual conflict in evidence that must be resolved in Plaintiff's favor
since there was no evidentiary hearing.  *Curry*, 949 F.3d at 392-93.  Alternatively, jurisdictional
discovery was appropriate to determine what was sold or not sold, as requested by Plaintiff in its
Response [54].  *See supra* n.6.  The Court did not address Plaintiff's request for jurisdictional
discovery.

Further, Defendant "believes that before clicking the 'plan [sic] your order' button, the
plaintiff could not verify and prove whether the relevant products could be sold or offered to be
sold to Illinois," and "if someone has clicked the 'plan your order,' the seller may not actually ship
the goods to Illinois, the plaintiff should place an order and actually be able to determine the

---

[7] Further, the Motion was filed by an individual named "Guo Fei," who was not a named Defendant in the
case.  Only registered Chinese companies can set up an Amazon storefront in China that sells to the United
States.  It appears that Defendant YoYoly is attempting to represent itself on a *pro se* basis, which is not
permitted for a registered business entity.  *See United States v. Hagerman*, 545 F.3d 579, 581-82 (7th Cir.
2008) (individuals are permitted to proceed pro se, but not business entities).

jurisdiction after receiving the goods." [50] at p. 3; [63] at p. 2. However, Defendant's unsworn "belief" is incorrect: "customers . . . are not simply typing their credit card numbers in a web form and hoping they get something in return"; the defendant "itself set the system up this way." *Curry*, 949 F.3d at 385 (quoting *uBid, Inc. v. GoDaddy Group, Inc*., 623 F.3d 421, 428 (7th Cir. 2010)).

Any suggestion that Defendant could affirmatively setup an Amazon.com e-commerce store targeting the United States and Illinois, offer for sale an allegedly infringing product on that store, accept money and then unilaterally decide whether to accept and fulfill an order based on the buyer is both factually inaccurate and in violation of the Amazon Services Business Solutions Agreement. *See* Chen Declaration at ¶¶ 5-6. In a similar case involving an eBay store, the court in *Volkswagen AG v. iman365-usa* explained:

> The Defendant's argument that "the Court lacks personal jurisdiction over them [because] sellers on eBay cannot target individuals in any state and have no control over who wins the eBay auction[,]" Def.'s Resp. Br. At 11, omits key facts that, under Seventh Circuit law, dictate a finding of purposeful availment. Specifically, this argument "ignores several of [the Defendant's] own actions that led up to and followed the sales[]"—namely, that the Defendant operated a commercial, interactive online store through which U.S. customers could purchase its products, thus holding itself out as open to do business with every state, including Illinois. *See Ill. V. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (finding that online purchases were not unilateral actions by customers—which generally would not satisfy the "minimum contact" requirement—where the defendant operated a commercial website open to business with the forum state).

2020 U.S. Dist. LEXIS 34218, at *8-9; *see also*, *Valtech, LLC v. 18th Ave. Toys Ltd.,* 2015 U.S. Dist. LEXIS 17138, at *12 (N.D. Ill. Feb. 12, 2015). As such, Defendant's intentional actions to target Illinois residents go well-beyond simply "maintaining" or "operating an interactive website accessible in the forum state." [73] at p. 6.

### b. Product Offered for Sale Is the Subject of the Litigation.

Defendant was selling, offering for sale, and advertising a product using counterfeit versions of Plaintiff's federally registered Rubik's trademarks and Rubik's copyrights to residents

of the United States, including residents of Illinois. *See* [54-1]. These actions are the subject of Plaintiff's trademark and copyright infringement claims, so Defendant's contacts with Illinois are clearly related to the claims in this suit. *See Curry*, 949 F.3d at 401 ("The gravamen of his case is that Revolution's advertisement and sale of its product in the national market caused confusion and consequently deprived Mr. Curry of the value of his trademark in those states, *including Illinois*, where the product was sold . . . The defendant's activity in the state is the very activity that allegedly caused the confusion at the heart of this litigation").

### 2. Seventh Circuit Cases Relied On in the Opinion Are Distinguishable Because Those Websites Did Not Offer for Sale Product to Illinois or the Product Offered for Sale Was Unrelated to the Litigation.

All of the "interactive websites" in the Seventh Circuit decisions relied on in the Order are distinguishable because they either did not affirmatively offer to sell and ship any tangible products to Illinois (*be2* and *Mobile Anesthesiologists*) and/or the products offered for sale to Illinois residents did not relate to the cause of action (*Advanced Tactical* and *Matlin*). Moreover, specific citations to Seventh Circuit cases in the Order are taken out of context from factually distinguishable cases.

In *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, the Court found that specific jurisdiction must rest on the litigation-specific conduct of the defendant in the proposed forum state. 751 F.3d 796, 801 (7th Cir. 2014). Based on this finding, the Court found that the sales to Indiana residents were not linked to the litigation because the goods sold on the website were non-infringing and were unrelated to the lawsuit. *Id.* Conversely, in this case, jurisdiction is based on Defendant's offer for sale of allegedly infringing products to Illinois residents, which is inextricably linked to Plaintiff's trademark infringement and counterfeiting claims.

11

*Matlin v. Spin Master Corp.*, 921 F.3d 701, 704 (7th Cir. 2019), is distinguishable because *Matlin* involved a breach of contract with a Virginia-based company as opposed to "the type of case where the defendants sold and shipped a defective product into Illinois that injured residents there." *Id*. at 707. Additionally, in *Matlin*, the plaintiff's purchase of the product occurred after the motion to dismiss was filed and was unrelated to the subject matter of the lawsuit. *Id*. Conversely, in this case, jurisdiction is based on Defendant's actions which include affirmatively creating U.S. facing e-commerce stores that are offering to sell and ship allegedly infringing products to the United States, including Illinois. This conduct is inextricably linked to Plaintiff's trademark infringement and counterfeiting claims.

The Court in *Matlin v. Spin Master Corp*. also distinguished the defendant's scale of contact with Illinois from the defendant's systematic conduct through repeated sales to Illinois in *Hemi*, but quoted language regarding the "stream of commerce" theory of personal jurisdiction. 921 F.3d. at 706. Cases including a standard stream-of-commerce analysis usually involve entities who cannot necessarily predict or control where downstream their products will land; intervening actors like distributors may take the products to unforeseeable markets. Here, Defendants affirmatively create e-commerce stores, then offer to sell and ship allegedly infringing products into the U.S., including Illinois, which indicates Defendants stand ready and willing to do business with Illinois residents.

The Order also appears to predicate personal jurisdiction based solely on sales of allegedly infringing products to buyers in Illinois ("a 'miniscule' number of transactions won't do"). [73] at p. 6. However, such a proposition is contrary to Seventh Circuit authority since it focuses on "the residents reaching back" and not Defendants' own actions in setting up an e-commerce store reaching out to do business in Illinois. *Hemi Grp.*, 622 F.3d at 758; *see also*, *Virgin Enters.*, 2014

12

U.S. Dist. LEXIS 98437, at *12 (*"Hemi [Group]* also shows that the precise dollar value of Defendants' sales to Illinois customers—either as an absolute number or as a percentage of total sales—is not dispositive for purposes of determining whether specific personal jurisdiction exists."); *Dental Arts Lab.*, 2010 U.S. Dist. LEXIS 124029, at *7 ("As long as one tortious act is committed in Illinois, the courts of the state, and thus this Court, may exercise personal jurisdiction over Defendant."). It also conflates the requirements for general and specific jurisdiction. *Cf. Daimler AG v. Bauman*, 134 S.Ct. 746, 762 n.20 (2014) ("General jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide"). Focusing on Defendant's actions in setting up the Amazon.com e-commerce store, instead of just sales, makes sense as there is no way for a brand owner to know how many products were sold into the jurisdiction until after a case is filed and some discovery is conducted.

Specifically, the Order relies on *be2 LLC* and *Matlin* to suggest that some number of sales are necessary to establish personal jurisdiction. [73] at pp. 6-7. However, in *be2 LLC*, the Court found that the "record before us does not show that [defendant] deliberately targeted or exploited the Illinois market" and suggests that "the 20 Chicagoans who created free profiles on be2.net may have done so unilaterally by stumbling across the website." *be2 LLC*, 642 F.3d at 559. Conversely, courts have expressly declined to classify actions such as Defendant's as "utterly fortuitous" or "unilateral": Defendant "aimed their alleged tortious products to residents in all fifty states and 'made [their] services available to anyone by way of [their] website[s]….'" *Valtech, LLC*, 2015 U.S. Dist. LEXIS 17138, at *12. The Order also cites language in *Matlin* stating that "a single incident conjured up by the plaintiffs' attorney for the exclusive purpose of establishing jurisdiction over the defendants" is not sufficient for personal jurisdiction. [73] at p. 7. However, and as explained above, in *Matlin*, the plaintiff's purchase of the product occurred after the motion

13

to dismiss was filed and was unrelated to the subject matter of the lawsuit. *Matlin*, 921 F.3d at 707. In this case, Defendant's offer for sale to an Illinois resident of allegedly infringing product occurred before the lawsuit and is the subject of the lawsuit. *See Monster Energy Co.*, 136 F. Supp. at 907-08 ("Defendants do not provide any evidence to suggest that they were induced by fraud to post images of counterfeit Monster Energy Products and invite potential Illinois buyers to place orders and buy counterfeit products.").

Finally, the defendant in *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.* was an entity that operated only in Texas whose sole member had never attempted to or conducted business in Illinois, but had an informational website about its business. 623 F.3d at 444. Here, Defendant affirmatively offered to ship infringing products to Illinois.

### 3. Defendant's Conduct Was Purposefully Directed at the Forum State Such that Defendant Would Anticipate Being Haled Into Court Here.

Under both the Illinois Long Arm Statute and Fed. R. Civ. P. 4(k)(2), notions of fair play and substantial justice are satisfied. Illinois has a strong interest in protecting Illinois consumers from being duped into purchasing allegedly infringing products. Furthermore, modern transportation and communications have made it less burdensome for a party to defend itself in a State where he derives economic benefits. *Burger King*, 471 U.S. at 474. Finally, fair play means that off-shore e-commerce store operators that decide to offer for sale and sell products to consumers in the United States, including Illinois, must come to the United States and stand accountable. *Christian Dior Couture, S.A.*, 2015 U.S. Dist. LEXIS 158225 at *13. Defendant "certainly should not be surprised by the jurisdictional consequences of [its] actions" given that it had sufficient resources to purposefully avail itself of the Illinois market. *Id.* at *14. The Defendant cannot "have its cake and eat it, too" by getting "the benefit of a nationwide business model with none of the exposure." *Hemi*, 622 F.3d at 760.

14

**4. Alternatively, Personal Jurisdiction Is Proper in This Court Pursuant to Fed. R. Civ. P. 4(k)(2).**

There can be no question that Defendant's Amazon.com e-commerce store targeted the United States. As such, should this Court determine that personal jurisdiction is not proper under Fed. R. Civ. P. 4(k)(1) based on the Illinois long arm statute, personal jurisdiction is proper in this Court pursuant to Fed. R. Civ. P. 4(k)(2) ("Rule 4(k)(2)"). Rule 4(k)(2) was not addressed in the Court's Order even though it was argued. [54] at p 13. Rule 4(k)(2) provides for personal jurisdiction through nationwide service of process over any defendant provided that: (1) the plaintiff's claims are based on federal law; (2) no state court could exercise jurisdiction over the defendants; (3) the exercise of jurisdiction is consistent with the laws of the United States; and (4) the exercise of jurisdiction is consistent with the Constitution. *Cent. States, Southeast and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000); *Plixer Int'l v. Scrutinizer GmbH*, 905 F.3d 1, 5 (1st Cir. 2018). Rule 4(k)(2) extends federal jurisdiction over non-resident defendants having sufficient contacts with the United States as a whole, but having insufficient contact with any single state to support jurisdiction. Fed. R. Civ. P. 4(k)(2) advisory committee's note (citing *Omni Capital Int.'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 111 (1987)). The first element of Rule 4(k)(2) is satisfied here because Plaintiff's claims arise under federal trademark law. Likewise, the second element is satisfied because Defendant has not named a suitable forum state. *See Robert Bosch LLC v. Trico Prods. Corp.*, 2013 U.S. Dist. LEXIS 103311, at *6 (N.D. Ill. July 24, 2013). The third and fourth elements of the Rule 4(k)(2) analysis require the same minimum contacts due process analysis conducted under Rule 4(k)(1)(A), the only difference being that the relevant forum is the United States as a whole, not an individual State. *Id.* at *5. As such, the third and fourth elements are satisfied here for the same reasons that satisfy the minimum contacts analysis required by Rule 4(k)(1)(A).

Dated this 24th day of March 2021.                Respectfully submitted,

                                                  /s/ Justin R. Gaudio
                                                  Amy C. Ziegler
                                                  Justin R. Gaudio
                                                  Allyson M. Martin
                                                  Greer, Burns & Crain, Ltd.
                                                  300 South Wacker Drive, Suite 2500
                                                  Chicago, Illinois 60606
                                                  312.360.0080
                                                  312.360.9315 (facsimile)
                                                  aziegler@gbc.law
                                                  jgaudio@gbc.law
                                                  amartin@gbc.law

                                                  *Counsel for Amici Levi Strauss & Co., H-D U.S.A.,
                                                  LLC, Entertainment One UK Ltd., Chrome Hearts
                                                  LLC, and Deckers Outdoor Corporation*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 24th day of March 2021, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Counsel for Amici Levi Strauss & Co., H-D U.S.A., LLC, Entertainment One UK Ltd., Chrome Hearts LLC, and Deckers Outdoor Corporation*